**Edwin Marious BERTSCH, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 65–H–34.**

United States District Court
S. D. Texas,
Houston Division.

June 10, 1966.

Clyde W. Woody, Houston, for petitioner.

Waggoner Carr, Atty. Gen. of Texas, Gilbert J. Pena, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

Memorandum and Order:

NOEL, District Judge.

In its Memoradum and Order of May 18, 1966, 254 F.Supp. 257, this Court found each of petitioner's allegations then before the Court to be without merit and dismissed his petition. By such action petitioner was denied leave to file his second amended petition for failure to have presented the new allegation contained therein to the Texas courts within the meaning of 28 U.S.C.A. § 2254. Petitioner then proceeded immediately to present this new allegation to the Texas Court of Criminal Appeals, which denied his application for writ of habeas corpus on May 25, 1966. On May 26, 1966, this Court granted petitioner a fourth stay of execution and leave to file his second amended petition, limited to the sole ground contained in the new allegation. It also ordered and set an evidentiary hearing for June 3, 1966.

The allegation of present concern is that a juror who sat on the Bertsch jury had prejudged petitioner to be guilty and had predetermined the electric chair to be the appropriate penalty, in derogation of petitioner's constitutional right to be tried by an impartial tribunal.

Some further background information on the inception of the allegation which was the subject matter of the evidentiary hearing is in order. On April 25, 1966, at a time when the pleadings appeared finally to be complete, with petitioner's numerous other allegations in a posture for final disposition, petitioner presented his motion to file a second amended petition based upon a newly discovered ground for relief. In pertinent part this motion stated: (a) that two brothers from Smithville, Texas, Henry and Vencil Vinklarek, accompanied by petitioner's son, Edwin Bertsch, Jr., had appeared in Mr. Clyde Woody's law office on April 4, 1966 to volunteer information relative to jury misconduct in the Bertsch case; (b) that, of the three men, only Vencil Vinklarek represented himself as having firsthand information; and, (c) that Vencil gave his affidavit on that day to the effect that his brother-in-law, George Vacek, one of the jurors in the Bertsch case, had stated at a family gathering, prior to the time Vacek received notice to serve on the jury, that if selected to serve on the jury he would vote for the death penalty (see Pet. Exh. 1).

Respondent filed his opposition to petitioner's motion on April 28, 1966, supported by a subsequent affidavit given by Vencil Vinklarek, in which Vencil stated that on April 25, 1966 he was not then certain, and could not have been on April 4th, whether the statement that he attributed to his brother-in-law had been made before or after the Bertsch trial (see Pet. Exh. 3). Respondent also furnished the sworn statement of George Vacek, the juror himself, that he had had no preconceived idea as to Bertsch's guilt at the time of his selection on the jury, and had made no such statement prior to that time. The pleadings relating to the motion were completed on May 5, 1966 when petitioner countered with the affidavit of Henry Vinklarek, in which Henry attributed the difference between his brother Vencil's affidavits

of April 4 and April 25 to "his reluctance to cause trouble in the family," and stated his belief to be that Vencil had told the truth the first time. While denying leave to file the second amended petition for failure to exhaust State remedies, this Court acknowledged in its Memorandum and Order of May 18, 1966 that a factual issue was presented by these conflicting statements which would have to be resolved prior to any determination on the merits of the new allegation.

Six witnesses testified at the evidentiary hearing on June 3, 1966. Petitioner called five—the brothers Vencil and Henry Vinklarek, Paul Huser and Warner J. Stavinoha (defense attorneys at Bertsch's State trial), and Fred Dailey, an attorney in Mr. Woody's office who was instrumental in reducing to affidavit form Vencil Vinklarek's statement of April 4. George Vacek, the juror, was the sole witness called by respondent. Testimony adduced at this hearing plus the opportunity to observe and appraise the various witnesses has removed all trace of the doubt raised by the seemingly conflicting affidavits.

Petitioner's key witness, and his only one with purported firsthand knowledge of the pertinent facts, was Vencil Vinklarek, a farmer living in Fayette County, Texas. Clearly, Vencil attempted accurately to reconstruct the conversation about which he testified and, to the best of his ability, to relate it in time to the Bertsch trial. However, he demonstrated a hazy memory in this regard as well as limited ability to articulate all that he had heard and observed. He was clear and certain on two important points: (a) that he had overheard his brother-in-law, George Vacek, discuss the Bertsch case at a family gathering; and (b) that he had heard Vacek respond to an inquiry made by someone at the gathering as to why "Bertsch got death and Sellers got life."[1]

Vencil had no independent recollection of whether this family gathering at which the remark was made occurred before or after the Bertsch trial, but he did say he had thought about the conversation many times since giving his affidavit to Mr. Dailey and that in view of what was said in the conversation it must have occurred after the Bertsch trial.

Vencil Vinklarek took the stand on two separate occasions during the evidentiary hearing of June 3, 1966. Throughout the entire interrogation during the first time he was on the witness stand, he testified with certainty that he had heard Vacek refer to the Bertsch case on but *one* occasion, but was unable to recollect whether this occasion was before or after the Bertsch trial. When recalled to the stand that afternoon, he was clearly weary and less able to understand and answer conceptual questions. While he stated during this later testimony that he could not remember whether he had heard his brother-in-law discuss the Bertsch case on more than one occasion, I attribute this later inconsistency to his tired and confused condition of mind at the time. But based on the entire record, I find as a fact that Vencil Vinklarek overheard Vacek discuss the Bertsch case on but one occasion.

Vencil Vinklarek's testimony then can be distilled down to the fact that while he has no recollection as to whether his brother-in-law made the remark before or after the trial, he is certain that he overheard him mention the Bertsch case on but one occasion, which was at a family gathering, and then in response to the question posed to George Vacek by someone present, as to "Why Bertsch got death and Sellers got life?" Subsequent to his first affidavit, dated April 4, but prior to June 3rd, Vinklarek had reasoned out for himself that, while he could not actually remember specifically

1. Vencil remembered his brother-in-law's response to have been to the effect that Sellers got off with life because he was drunk and after his wife and had shot his daughter by mistake, whereas Bertsch intended to shoot his daughter because he was angry.

whether Vacek's remark was made before or after the Bertsch trial, what he said must have been said after the trials of both the Bertsch and the Sellers cases because, in response to an inquiry, Vacek had explained the case in relation to both cases.

Vencil Vinklarek's testimony, the only direct testimony offered in support of petitioner's new allegation, viewed in the light most favorable to petitioner, was at best equivocal as to what George Vacek had said at the family gathering. Had Vencil Vinklarek's testimony been the only testimony offered at the hearing, I would still not have granted petitioner's application, for properly to impeach the mental attitude of a person selected as a juror after careful voir dire, and after such person has been sworn and served on the jury, the evidence of his bias or prejudice or prior impeaching statements must be clear and unequivocal. Even though equivocal as to the exact time the statement by George Vacek was made, in relation to the time of the Bertsch trial, I find that Vencil Vinklarek was convinced that it occurred after the Bertsch trial because of the question which elicited the statement from Vacek and Vacek's reply to the statement.

But what Vinklarek testified to is clarified when viewed in context with the testimony of the juror George Vacek. Vacek, possessed of an "affidavit face," was a very convincing witness. He was a deliberate, well-mannered, alert, courageous, well-informed man, expressing firm convictions and clear in his recollection and responses. Vacek was certain that he had made no statement concerning the Bertsch case prior to being sworn as a juror in the case, and I find as a fact that he did not. Vacek, who farms 650 acres located in Fayette County, across the road from Vencil Vinklarek, testified that he had no knowledge or information of the Bertsch case prior to his selection on the jury other than having seen a short notice of it in the local newspaper. He added that the 650 acres keeps him busy, described himself as not being a "mixer," saying that when

something is needed from town he sends his wife, and that he had had no exposure to whatever gossip, if any, may have been circulating through the town concerning the impending trial. He recalled attending a family gathering *after* the trial, where Vencil was present, and remembered making a remark to the effect that if the same case were tried in the future, on the same evidence, that he would again vote the same way (considering the possibility that there might be a retrial or review of the Bertsch case). He said he thought he had done the right thing. He was certain and unequivocal on the point that he had not prejudged Bertsch or predetermined the appropriate penalty to be death, and, as a finding of fact of this Court, I find that he had not done so. I further find as a fact that the remark or statement made by Vacek which gave rise to this evidentiary hearing was made after the Sellers trial and after the selection of Vacek as a juror for the Bertsch trial, as well as after the Bertsch trial.

Nothing of materiality was added by the testimony of Henry Vinklarek, as he had no independent knowledge of the facts. Henry, who earns his living as a barber in Smithville, Texas, and Edwin Bertsch, Jr., petitioner's son, accompanied Vencil Vinklarek to the offices of Clyde Woody, attorney for petitioner, to make the statement on April 4 which was there reduced to affidavit form. It is clear from the testimony of Vencil Vinklarek that his brother Henry insisted that he sign the affidavit when Vencil appeared reluctant to proceed with the matter.

As I stated from the bench at the close of the hearing June 3, I view this entire matter as a frivolous attack on a State judicial proceeding. What was unclear and in doubt from the affidavits of Vencil Vinklarek and George Vacek vanished in the light of oral testimony. From the testimony of Vencil Vinklarek and George Vacek, it became possible to reconstruct a three-year-old event in all material respects with almost exact certainty.

**310**

It also should be noted that the testimony of the two attorneys who defended Bertsch at his State trial, Paul Huser of Schulenberg, Texas, and Werner J. Stavinoha of Weimar, Texas, revealed that the jurors for the Bertsch trial were chosen with meticulous care. They testified that State District Judge Dittert personally questioned each juror, satisfying himself first, that nothing upon which to base a challenge for cause existed, before turning the interrogation over to the attorneys. They recalled that Judge Dittert, on his own motion, excused each juror who expressed any preconceived idea of innocence or guilt.

The petition is therefore dismissed.

The Clerk shall record this Memorandum and Order, and shall send a copy to petitioner and to each counsel.